IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY WILSON, | ) | CASE NO. 1:11-CV-2740 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | REPORT & RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Stanley Wilson's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be AFFIRMED.

I. INTRODUCTION & PROCEDURAL HISTORY

On April 17, 2007, Plaintiff Stanley Wilson ("Plaintiff" or "Wilson") protectively applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits alleging that he became disabled on December 19, 2005, due to suffering from sleep apnea, asthma and injuries to his left leg and knee. (Tr. 70-71, 121-32, 146). Plaintiff's

applications were denied initially and upon reconsideration.[1] (Tr. 70-73, 83-88, 93-106). Thereafter, Wilson requested a hearing before an administrative law judge to contest the denial of his applications. (Tr. 107-08). The Social Security Administration granted Plaintiff's request and scheduled a hearing.

On July 20, 2010, Administrative Law Judge Traci Hixson (the "ALJ") convened a hearing to evaluate Plaintiff's applications. (Tr. 30-67). Plaintiff appeared at the hearing with counsel and testified before the ALJ. (*Id*). On February 4, 2011, the ALJ issued a partially favorable decision determining that Wilson became disabled on November 27, 2008, but not before that date. (Tr. 8-22). Subsequently, Wilson requested review of the ALJ's decision from the Appeals Council. (Tr. 4). However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. PERSONAL & MEDICAL EVIDENCE[2]

Wilson, born on November 28, 1958, was 47 years old on his alleged onset date. (Tr. 33). Accordingly, at that time he was considered as a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 416.963(c), 404.1563(c). However, after Wilson turned 50, Social Security viewed him as an "individual closely approaching advanced age". *See* 20 C.F.R. §§

---

[1] Plaintiff also applied for benefits in July 2006, but these applications were also denied and were not incorporated into the current applications. (Tr. 68-69, 12).

[2] The following recital of Plaintiff's medical record is merely an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record.

416.963(d), 404.1563(d). Plaintiff completed the 11th grade and has past experience working as a janitor, trainer, telemarketer (telephone solicitor) and deli counter clerk. (Tr. 40-43, 60-61).

Plaintiff's physical impairments relative to his disability applications began in December 2005 when he slipped on ice and fell down his porch steps. (Tr. 302, 920). This fall caused Wilson to suffer a rupture to his left quadriceps tendon which Plaintiff underwent surgery to repair. (Tr. 302). Following this procedure, Wilson attended physical therapy and pain management treatment. (Tr. 298-99, 362-66, 379-84). However, on numerous occasions Plaintiff failed to attend scheduled appointments and to adhere with his diet and exercise program. (Tr. 366, 384).

On December 29, 2006, Wilson reinjured himself after suffering a second fall down a set of steps. (Tr. 776). This fall caused Plaintiff to partially rupture his right quadriceps tendon and injure his neck and back. (*Id*.; Tr. 420). Wilson's doctors prescribed him a knee brace for his right knee and advised him to use a cane or crutches to walk. (Tr. 423). His doctor also indicated that Plaintiff would start physical therapy in three weeks. (*Id*.). During the beginning months of 2007, Plaintiff received steroid injections to manage his pain and continued to intermittently attend physical therapy. (Tr. 432, 425-26, 441, 520). Plaintiff also underwent two MRIs of his spine and knees. (Tr. 422, 505). The MRI of his spine showed "[p]osterior element changes resulting in moderate canal stenosis [at] L3-4 and L4-5." (Tr. 422). A MRI of Wilson's knees revealed mild degenerative changes and a single fissure in Wilson's lateral tibial plateau. (Tr. 505).

On June 25, 2007, Wilson presented to Dr. Shu Que Huang for a consultative examination. (Tr. 609-16). The physician examined Plaintiff's back and observed tightness and tenderness in Wilson's paraspinal muscle and reduced motion in his back. (Tr. 616). But, Dr.

3

Huang was unable to perform a full assessment of Plaintiff's strength in his lower extremities because Wilson did not give any resistance, apparently due to his fear of hurting himself. (*Id.*). Dr. Huang noted Plaintiff was overweight, had a peculiar gait and walked with a cane. (Tr. 616). Given Plaintiff's reported pain and injuries, Dr. Huang opined Plaintiff was not self-sufficient, and Dr. Huang was "not so sure he [wa]s employable at all". (*Id.*).

In July 2007, Plaintiff presented to Dr. Raymond Scheetz with complaints of right knee pain. (Tr. 997). Plaintiff also complained of pain all over his body, however, Plaintiff was unable to describe the pain. (Tr. 660). Upon examination, Dr. Scheetz transferred Plaintiff to the emergency room to verify whether Plaintiff was suffering from deep venous thrombosis ("DVT") or a ruptured Baker's cyst. (Tr. 999). Eventually, it was discovered that Wilson suffered from DVT and he was treated for this condition accordingly. (Tr. 845-46). Later in the month, Dr. Scheetz's treatment notes state "? fibromyalgia" presumably indicating that the doctor questioned whether Plaintiff suffered from this condition as well. (Tr. 659).

On July 24, 2007, Dr. Jeffrey Vasiloff, a state agency reviewer, evaluated Plaintiff's residual functional capacity ("RFC"). (Tr. 630-37). Dr. Vasiloff opined Wilson retained the ability to lift or carry 10 pounds occasionally and less than 10 pounds frequently. (Tr. 631). He further indicated that Plaintiff could stand or walk for approximately two hours each workday given the assistance of a hand-held walking device, however, he noted Plaintiff could not use foot pedals. (*Id.*). In addition, the doctor found Plaintiff could sit for roughly six hours a day and retained a limited ability to push or pull with his lower extremities. (*Id.*). Dr. Vasiloff limited Wilson to only occasional climbing, balancing, stooping and crawling, and precluded Wilson from ever working in an environment which required climbing ladders, ropes or scaffolds, crouching or kneeling. (Tr. 632). Furthermore, Dr. Vasiloff commented that he did

4

not feel Wilson had given his full effort in his consultative examination with Dr. Huang. (*Id.*). Dr. Vasiloff discounted Dr. Huang's conclusion that Plaintiff could not work because Wilson's "functionalities demonstrated during the exam plus [his] apparent lack of full effort mitigate[d against] this." (Tr. 636).

Plaintiff was scheduled to continue physical therapy throughout the latter months of 2007, but he continued his habit of routinely missing appointments. (Tr. 824). During a therapy session in September 2007, Wilson reported that he experienced low back pain relief with exercises, and that he had not taken any pain medication since starting therapy. (Tr. 832). Wilson's therapist advised him of the potential for further improvement if he was complaint with his physical therapy program. (Tr. 824).

On April 8, 2008, Plaintiff underwent surgery on his neck and back due to disc herniation at C3-4. (Tr. 1115-18). Prior to surgery Plaintiff had complained to his doctor of neck and back pain in March 2008. (Tr. 1117). Wilson did well post-operatively. (Tr. 1118). Upon discharge, Plaintiff's doctor placed lifting restrictions on him for the first four weeks following the surgery. (*Id.*). At a follow-up visit three months later, Plaintiff reported doing well and experiencing improvement in his range of motion. (Tr. 1371). Nevertheless, Wilson reported that he still suffered from persistent lower back pain. (*Id.*).

On July 8, 2008, Plaintiff's treating physician, Dr. Krishe Menezes completed a medical source statement evaluating Plaintiff's physical capacity to work. (Tr. 1211-12). Instead of directly responding to the questions contained within the form, Dr. Menezes adopted the findings of Plaintiff's physical therapist contained in a functional capacity evaluation, which Dr. Menezes attached to his report. (*Id.*). The therapist's evaluation indicated Plaintiff could not sit for longer than 40 minutes, stand for 3 minutes, or walk for 5 minutes without taking a break. (Tr. 1213).

5

Based on these and other opinions rendered by the therapist, Dr. Menezes stated he was "of the opinion that [] Wilson [wa]s disabled." (Tr. 1212). Additionally, when Dr. Menezes had examined Plaintiff months prior, the doctor noted Plaintiff complained of progressive weakness in all four of his extremities. (Tr. 926). Dr. Menezes commented that the cause of Plaintiff's pain was unclear, but there was a "[p]ossibility of fibromyalgia". (*Id.*).

Finally, on September 3, 2008, state agency reviewer, Dr. Esberdado Villanueva, assessed Plaintiff's RFC. (Tr. 1224-31). Dr. Villanueva indicated Wilson was capable of lifting 20 pounds occasionally and 10 pounds frequently. (Tr. 1225). He also concluded Wilson could sit, stand or walk for roughly six hours each workday, but only retained a limited ability to push or pull with his lower extremities. (*Id.*). The doctor found Plaintiff could occasionally climb stairs or ramps, stoop, kneel, crouch or crawl, but could never climb ladders, ropes or scaffolds. (Tr. 1226). Dr. Villanueva also restricted Wilson from performing overhead work due to the recent surgery on his spine. (Tr. 1227). When commenting on the severity of Wilson's symptoms, Dr. Villanueva remarked that the "conclusions drawn from th[e] exam by [Dr. Huang] were not consistent w[ith] the remainder of the medical evidence. . . . He is AT LEAST capable of this RFC." (Tr. 1229) (emphasis in original). Dr. Villanueva also commented that Plaintiff's failure to give his full effort during the exam with Dr. Huang prevented the results from illustrating a true picture of Wilson's functional abilities. (Tr. 1230).

### III. ALJ's RULING

The ALJ made the following relevant findings of fact and conclusions of law. At step one of the sequential analysis,[3] the ALJ determined Wilson had not engaged in substantial gainful activity since his alleged onset date. (Tr. 15). At step two, the ALJ held Plaintiff suffered from the following severe impairments since his alleged onset date of December 19, 2005: "status-post bilateral quadriceps tendon rupture, degenerative disc disease of the lumbar spine, status-post cervical discectomy and fusion, obesity, asthma, and obstructive sleep apnea." (Tr. 15). However, as of November 27, 2008, the ALJ found Plaintiff also suffered from the severe impairment of fibromyalgia. (*Id*.). But, at step three, the ALJ ruled that none of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.).

---

[3] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Before moving to the next step, the ALJ assessed Wilson's RFC. (Tr. 15-20). From Plaintiff's alleged onset date through November 26, 2008, the ALJ determined Plaintiff retained the physical ability to perform a limited range of sedentary work due to a number of exertional and nonexertional restrictions. (Tr. 15). Because the ALJ deemed Plaintiff to be so equipped, the ALJ found Wilson was capable of performing his job as a telephone solicitor prior to November 27, 2008. (Tr. 20-21). However, the ALJ held Wilson became disabled as of November 27, 2008, based on a consideration of Plaintiff's age, education, work experience and RFC. (Tr. 21). The ALJ explained that a finding of "disabled" was warranted by operation of Medical-Vocational Rule 201.10. (*Id.*).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* "Substantial evidence" has been defined as more than a scintilla of evidence but less than a

preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff challenges the ALJ's decision on a number of grounds. First, Plaintiff contends the ALJ improperly disregarded opinions rendered by three medical sources. Second, Wilson objects to the ALJ's negative assessment of his credibility and complaints of pain prior to November 27, 2008. Finally, Plaintiff argues that the ALJ selected an arbitrary date by which to find him disabled. For the reasons that follow, the Court rejects Plaintiff's arguments.

### A. Medical Opinion Evidence

It is well-established that an ALJ must give special attention to the findings of a claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, referred to as the "treating source rule" recognizes that physicians who have a long-standing relationship with an individual are best-equipped to provide a complete picture of

the person's health and treatment history. *Id*; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).[4] Opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not given controlling weight, the ALJ must consider several factors to determine what weight the opinion should be afforded. These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factor which may support or contradict the opinion. 20 C.F.R §§ 416.927(c)(2)-(6), 404.1527(c)(2)-(6). Moreover, the regulations require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions. 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).

Wilson contends that the ALJ erred by rejecting the opinions of two of her treating physicians, Dr. Raymond Scheetz and Dr. Krishe Menezes, and the opinion of a one-time examining physician, Dr. Shu Que Huang.

### 1. Dr. Menezes

In July 2008, Dr. Menezes completed a formal evaluation of Wilson's physical capacity to perform various work functions. (Tr. 1211-12). At the conclusion of the report, the physician expressed her opinion that Wilson was disabled. (Tr. 1212). Plaintiff also notes that earlier in

---

[4] Effective March 26, 2012, sections 404.1527 and 416.927 of the Code of Federal Regulations were amended. Paragraph (d) of each section was redesignated as paragraph (c). *See* 77 F.R. 10651-01, 2011 WL 7404303.

2008, Dr. Menezes diagnosed Plaintiff with progressive weakness in each of his extremities and indicated the possibility of Plaintiff having fibromyalgia. (Tr. 926).

The ALJ assigned "little weight" to Dr. Menezes' finding that Plaintiff was disabled because the functional capacity evaluation upon which Dr. Menezes' opinions were based was performed only two months after Wilson's cervical surgery. Plaintiff objects to the ALJ's decision to reject the doctor's opinion on this basis. Plaintiff notes that his surgeon informed him that his cervical surgery would be mostly preventative in nature and that it would not improve his condition. (Pl.'s Br. at 15). Consequently, Plaintiff submits that it was improper for the ALJ to discredit Dr. Menezes' opinion based upon its proximity to Plaintiff's cervical surgery because the surgery did not impact Plaintiff's functional ability.

Despite Plaintiff's objection, the undersigned is satisfied with the explanation provided by the ALJ. Dr. Menezes' comment that Wilson was disabled essentially expressed the doctor's opinion on an issue reserved to the Commissioner and was not entitled to any deference. *Turner v. Comm'r of Soc. Sec.*, 681 F. App'x 488, 493 (6th Cir. 2010) ("When a treating physician [] submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is 'disabled' or 'unable to work' – the opinion is not entitled to any particular weight.") (*citing* 20 C.F.R. §§ 404.1527(d), 416.927(d)). Plaintiff has not presented the Court with any case law showing how or why Dr. Menezes' finding should have nonetheless been given controlling weight.

Although the ALJ did not reject the doctor's statement due to this flaw, the ALJ indicated that she assigned "little weight" to the opinion because of its timing relative to Plaintiff's cervical surgery. This was also a valid reason to minimize the weight assigned to the opinion. It is true that Plaintiff's surgeon stated that the cervical procedure would be *mostly* preventative in

11

nature, (Tr. 777), but the doctor did not state that the surgery *would not* benefit Plaintiff as Wilson contends. Rather, the surgeon indicated that the surgery *may not* improve Plaintiff's symptoms. (*Id.*). In other words, the surgeon did not rule out the possibility that the surgery could benefit Plaintiff. Therefore, it was reasonable for the ALJ to conclude that an evaluation performed only two months after the surgery would not fully reflect Plaintiff's abilities given its proximity to the procedure. Had the ALJ completely rejected Dr. Menezes' opinion on this basis, Plaintiff's argument would be more persuasive, however, the ALJ's decision to assign some amount of credit to the doctor's opinion was an acknowledgement that the surgery did not totally cure Plaintiff's ailments.

Wilson also suggests that the ALJ should have found his fibromyalgia to be a severe impairment prior to November 2008. Yet, Plaintiff has not identified any evidence showing Dr. Menezes diagnosed Plaintiff with the condition at an earlier point in time. Instead, Wilson points to a treatment note from Dr. Menezes wherein the doctor stated that Wilson experienced progressive weakness in all four of his extremities, the cause of which was unclear.[5] (Tr. 926). Dr. Menezes then stated that there was a "[p]ossibility of fibromyalgia". (*Id.*). But, a *possible* diagnosis is not the same as an *actual* or *verified* diagnosis. "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007) (*citing Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988)). Therefore, Dr. Menezes' comment that it was

---

[5] From a review of the record, the undersigned cannot determine whether Dr. Menezes rendered this opinion in July 2007 or January 2008. *See* (Tr. 926).

possible that Wilson suffered from fibromyalgia is insufficient to show that Wilson actually suffered from the illness at that time.

### 2. Dr. Raymond Scheetz

Next, Plaintiff argues the ALJ erred by disregarding the opinion of Dr. Raymond Scheetz. Plaintiff again claims that the ALJ should have found him to suffer from fibromyalgia at an earlier point in time, now based upon Dr. Scheetz's findings. Wilson contends Dr. Scheetz diagnosed him with "probable fibromyalgia" in July 2007, (Pl.'s Br. at 16), over a year prior to the ALJ deeming this condition as a severe impairment. However, the undersigned is somewhat troubled by Plaintiff's continued misconstrual of the record. The record identified by Plaintiff does not indicate that Dr. Scheetz diagnosed him with *probable* fibromyalgia. *See* (Tr. 659). To the contrary, under the heading "impression/diagnosis" the treatment note states "? fibromyalgia". (*Id*.). The question mark located before the term "fibromyalgia" clearly signals that Dr. Scheetz questioned this finding. Plaintiff's brief repeatedly argued that Dr. Scheetz diagnosed him with *probable* fibromyalgia, but failed to explain how the phrasing of the doctor's note – "? fibromyalgia" – can be interpreted as a probable diagnosis rather than a possible diagnosis. Regardless, even if Dr. Scheetz's records stated that Wilson probably had fibromyalgia, this still would not constitute an actual diagnosis of the illness. *See Rogers*, 486 F.3d at 244; *Preston*, 854 F.2d at 820.

Though the ALJ did not specify the amount of weight he attributed to Dr. Scheetz's findings, the ALJ was undoubtedly aware of the doctor's opinion as the ALJ referenced one of Dr. Scheetz's findings in her decision. Additionally, Plaintiff did not point to any other finding made by Dr. Scheetz which could have arguably lead the ALJ to reach a different conclusion. Thus, in such a case, it would be futile to remand in order for the ALJ to expressly address how

13

she viewed the doctor's opinions.  *See Bollenbacher v. Comm'r of Soc. Sec.*, 621 F. Supp.2d 497, 502 (N.D.Ohio 2008) (*citing Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006)) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").  This is especially true where, as here, it is unclear whether Dr. Scheetz meets the definition of a treating physician to trigger the heightened scrutiny applied to opinions from these doctors.

### 3. Dr. Shu Que Huang

Dr. Huang performed a one-time consultative examination of Plaintiff on June 25, 2007. (Tr. 615-16).  The doctor reviewed Plaintiff's medical history and noted Plaintiff required the use of a cane to walk.  In summarizing his findings, the doctor noted Wilson had sustained a rupture to his left quadriceps tendon, a partial tear of his right quadriceps tendon, and in the doctor's opinion, Plaintiff also suffered from chronic pain.  (Tr. 616).  As a result, Dr. Huang concluded Plaintiff was not self-sufficient, and therefore, Dr. Huang was not sure whether Plaintiff was "employable at all" due to his severe chronic pain.  (*Id*.).  However, Dr. Huang noted that he could not fully examine Wilson's retained strength in his lower extremities because Wilson refused to partake in certain tests, allegedly for fear of hurting himself further.  (*Id*.).

The ALJ gave Dr. Huang's opinion little weight.  The ALJ provided two reasons for this decision.  First, the ALJ explained that Dr. Huang examined Wilson only a few months after Wilson partially ruptured his right quadriceps tendon.  Second, the ALJ noted that Wilson was not attending physical therapy at the time Dr. Huang rendered his opinion.  Yet, Plaintiff only takes issue with the ALJ's first stated reason.  Plaintiff contends the ALJ should not have discounted Dr. Huang's opinion on this ground because, *inter alia*, Plaintiff's disability

application was based in part upon the partial tear to his right quadriceps tendon. Plaintiff's argument appears to be that because the right quadriceps rupture was one of the impairments under which Plaintiff alleged disability, there was no harm caused by Dr. Huang considering this impairment as part of his evaluation. The undersigned would tend to agree.

Nonetheless, setting this reason aside, the ALJ provided another independent reason for reducing the weight given to Dr. Huang's findings, to which Plaintiff levied no objection. The ALJ highlighted that Plaintiff was not attending physical therapy at the time Dr. Huang penned his report. This reason is sufficient to justify the ALJ's actions as the opinions of a one-time examining physician are not entitled to any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The record shows that Plaintiff was repeatedly encouraged to continue regular physical therapy treatment as it would decrease his pain symptoms and increase his strength. *See* (Tr. 832-33). Notably, on September 5, 2007, Plaintiff's physical therapist noted that Wilson experienced pain relief with exercises and had not taken any pain medication since starting therapy. (Tr. 832). Additionally, the court notes that two state agency reviewers, Drs. Jeffrey Vasiloff and Esberdado Villanueva, both disagreed with Dr. Huang's conclusion because the doctor's opinion was based on his examination of Plaintiff wherein Plaintiff did not give his full effort. (Tr. 631, 636, 1229-30). Therefore, substantial evidence supports the ALJ's decision to discount Dr. Huang's opinion.

### B. Plaintiff's Credibility

It is the ALJ's responsibility to make decisions regarding the credibility of witnesses. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008)

(*citing* *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Notwithstanding, the ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247.

This circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. §§ 416.929(a), 404.1529(a); *Rogers,* 486 F.3d at 247; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994). First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms. *Rogers*, 486 F.3d at 247. Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. *Id*. The ALJ should consider the following factors in evaluating the claimant's symptoms: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. *Id.*; *see Felisky*, 35 F.3d at 1039-40; *see also* SSR 96-7p.

Here, the ALJ properly evaluated Plaintiff's claims of pain and other disabling symptoms pursuant to this two-step process. Although the ALJ found that Wilson's impairments could reasonably be expected to cause his alleged symptoms, the ALJ discounted the credibility of Plaintiff's allegations regarding the intensity, persistence and limiting effects of his symptoms at

16

the second step of the two-part inquiry. The ALJ supplied three reasons for discrediting Plaintiff's allegations. (Tr. 19). First, the ALJ explained that Plaintiff's left knee was doing well prior to Wilson suffering his second fall. Next, the ALJ pointed out that, without good reason, Plaintiff had missed several physical therapy appointments. And finally, the ALJ observed that several of Plaintiff's doctors had encouraged him to be more active, rather than more sedentary.

Plaintiff did not object to any of these reasons supplied by the ALJ. Instead, Plaintiff recited a host of ailments which he alleges he has suffered from prior to the ALJ's determined disability date of November 27, 2008. However, the mere diagnosis of a condition does not speak to the severity of the condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). It was the ALJ's responsibility to assess the credibility of Plaintiff's statements regarding the severity of his pain. *Duncan*, 801 F.2d at 853-54; *Felisky*, 35 F.3d at 1039-40. In the case *sub judice*, the ALJ did not fully credit Plaintiff's statements regarding the severity of his symptoms and provided sufficient reasons for failing to do so which Plaintiff did not challenge.

### C. Onset Date

Lastly, Plaintiff accused the ALJ of selecting an arbitrary disability onset date upon which to grant benefits. The ALJ ruled that Wilson became disabled as of November 27, 2008, by operation of Medical-Vocational Rule 201.10. (Tr. 21). This ruling directs the adjudicator to enter a finding of "disabled" when the following conditions are met: 1) the claimant falls within the "closely approaching advanced age" category; 2) the claimant has a limited educational background; 3) the claimant's prior work experience was skilled or semiskilled and the skills are not transferable; and 4) the claimant is limited to sedentary work. 20 C.F.R. Pt. 404, Subpt. P, § 201.10.

In the instant case, this rule directed the ALJ to find Wilson disabled as of his 50th birthday on November 28, 2008.[6] On that date, Plaintiff changed age group classifications according to Social Security regulations. Wilson progressed from the age group consisting of "younger person[s]" or those under the age of 50, and graduated into the age group identifying those persons who are between the ages of 50 and 54, which the administration views as "person[s] closely approaching advanced age." *See* 20 C.F.R. §§ 404.1563(c)-(d), 416.936(c)-(d). Given Plaintiff's age, 11th grade education, lack of transferable work skills, and RFC for less than the full range of sedentary work,[7] the ALJ concluded Plaintiff became disabled as of his 50th birthday. Accordingly, the ALJ's determined onset date was not arbitrary but in accordance with Medical-Vocational Rule 201.10.

---

[6] The ALJ actually held Plaintiff became disabled on November 27, 2008, the day prior to Plaintiff's 50th birthday. (Tr. 21). However, this one day error inured to Plaintiff's benefit and is *de minimis*.

[7] The ALJ's RFC assessment for the time period prior to and after November 27, 2008 are nearly identical save the additional restriction for the latter period indicating that Plaintiff would be absent from work three times per month. *Compare* (Tr. 15-16) *and* (Tr. 20). They both limit Wilson to less than the full range of sedentary work.

VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: January 11, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).